# Seay, et al. v. Huggins, et al.

### Bill to Declare a Deed a Cloud and to Cancel.

(Decided November 4, 1915.    Rehearing denied December 2, 1915.
70 South. 113.)

1. *Wills; Construction; Deed or Will.*—In construing an instrument which may operate as a will or a deed according to circumstances, the court is inclined to favor construing it as testamentary, without attaching controlling importance to mere form, ut res non pereat.

2. *Same; Evidence.*—When an instrument is so framed as in any event to postpone actual enjoyment until the death of the maker, all the attending circumstances may be put in evidence as aids in determining whether it was intended to operate as a deed or will.

3. *Same.*—Where an instrument was executed by the owner of government land occupying a part thereof as a homestead, reciting a consideration of $3.00, and granting and conveying unto the grantee, their heirs and assigns, the land, together with the personal property he then owned or might own at the time of his death, and providing that it should not take effect until after his death and the death of his wife, and reserving to him and his wife a life estate, and the right to sell or use the personal property, in form a warranty deed, when construed with reference to the fact that the grantor and his wife had no children, and had taken the grantees named therein into his home and reared them, and his declared purpose to leave them his property after the death of himself and wife, his retention of its possession for four years, after which he sent the instrument to one of them with a letter explaining that it would show how he wanted his affairs settled when he was gone, and his reference to the paper as his will, and a change in its date, shows that it was intended as the maker's will; and in such a case there was no delivery of the instrument to take effect in praesenti.

4. *Same; Homestead.*—The testamentary character of an instrument in form a warranty deed was not affected by the fact that deceased owner of the property conveyed thereby could not by will deprive his widow of the right to homestead without her concurrence, evidenced as the statute requires, since the disposition of property by will in every such case is subject to the homestead rights of the surviving wife.

[Seay, et al. v. Huggins, et al.]

APPEAL from Pike Circuit Court.

Heard before Hon. W. R. CHAPMAN.

Bill by H. L. Seay and others against Rebecca N. Huggins and others to declare a certain deed a cloud upon title, and to cancel and annul the same. Decree for respondents, and complainants appeal. Affirmed.

The bill alleges that for many years prior to 1903 William Huggins owned and was seised and possessed of certain lands, which are described by government subdivision, containing 200 acres, and that of this land a certain named government subdivision, consisting of 160 acres, was occupied by said William Huggins as a homestead; that said William Huggins died in 1903, as a bona fide resident citizen of the county, and left surviving him his widow, Rebecca Huggins, but no children or descendents of children; that there has been no administration, and no necessity for one, and no proceeding to set apart the homestead to the widow, but that the widow has continued to reside on the land, and to use, not only the homestead, but the other land as well; that William Huggins was twice married, but had no children born to him by either wife, and that his father and mother were both dead before him, and that he had only one sister, who also died prior to him, but that this sister left surviving her four children, one of whom, to wit, Nancy Manning, is still living, and another, Phoebe Ann Seay, who is dead, left surviving her eight children, viz., H. L. Seay and the other complainants; that another daughter of said Phoebe Ann Seay is dead, to wit, Georgia Parker, but left surviving certain children named; and that all of the above-named persons who are the lineal descedants of his only sister are the only heirs at law and only lineal descendants of said William Huggins, and as such are the owners of the land, subject

to the life estate of the widow. The bill further alleges the execution by Rebecca N. Huggins, in the year 1907, of a deed to J. D. Green, J. H. Hester, and Sallie A. Tidwell, conveying by general warranty the land of which William Huggins died seised and possessed, reserving to herself a life estate therein, and that these people are asserting and claiming title in themselves to the remainder in said land after the termination of the life estate. The bill further avers that on August 8, 1912, there was filed for record an instrument in writing purporting to be a deed from William Huggins to the said Green, Hester, and Tidwell, with general covenants of warranty, conveying the lands herein described, and purporting to reserve to said William Huggins and Rebecca Huggins a life estate in said land. This latter deed is the deed attacked and referred to in the opinion, and is as follows:

Know all men by these presents, that William Huggins, a married man, for and in consideration of the love and affection I have for Sallie A. Tidwell, J. D. Green, and J. H. Hester, and in consideration of $3 to me in hand paid by the said Tidwell, Green, and Hester, the receipt of which I do hereby acknowledge, do hereby grant, bargain, sell, and convey, and confirm unto the said Sallie A. Tidwell, J. D. Green, and J. H. Hester, heirs and assigns, the following described parcel or tract of land [describing the land described in the bill]; and I also grant and convey to the said Sallie A. Tidwell, J. D. Green, and J. H. Hester all of the personal property I now own, or may own at the time of my death; Provided, however, this deed shall not take effect until after my death, and the death of my beloved wife, Rebecca N. Huggins. It is expressly understood that I hereby reserve a life estate in said lands

for myself and wife, with the rights to use the rents, incomes, and profits therefrom the term of my natural life; and I reserve the right to sell or otherwise use said personal property as I see fit during my natural life. [Here follows the usual covenants of warranty.] In witness whereof the said William Huggins has hereunto set his hand and seal this the 3d day of August, 1893.

Signed by William Huggins, and signed, sealed, and delivered in the presence of J. C. Watkins and W. J. Leverett. Here follows the usual form of acknowledgment of conveyance as of the same date, taken before R. B. Windham, justice of the peace. The other facts sufficiently appear.

E. R. BRANNEN, for appellant.

JOHN H. WILKINSON, for appellee.

SAYRE, J.—Complainant in the court below, appellants here, by this bill filed under the statute authorizing suits in equity to settle the title to lands and to clear up all doubts or disputes concerning the same, sought to remove the instrument in dispute as an obstacle between them and their inheritance of the land therein described. Complainants are the collateral heirs of the maker of the instrument, who left no lineal descendants. Their contention is that the instrument was intended to operate in praesenti as a conveyance of a future interest in the land, that the land which it purports to convey was the grantor's homestead at the time, and that it was and is a nullity, for the reason that grantor's wife did not join in its execution. The chancellor, holding the instrument to be a will, dismissed the bill. Hence this appeal.

This instrument has been drawn in the form of a deed; but upon its face it is not entirely clear whether

it was intended as a will or a deed. Its disposition of personal property that might be owned by the maker at the time of his death, as well as its general provision that it should not take effect until after that event, indicate a reservation—or something very like a reservation—of the maker's right to deal with the property as his own, notwithstanding the instrument, until his death.—*Gillham v. Mustin*, 42 Ala. 365; *Crocker v. Smith*, 94 Ala. 295, 10 South. 258, 16 L. R. A. 576. It may be noted, also, as of some importance in this connection, that the instrument, clear in this respect, evinces the maker's intention to create a life estate in his wife, which, however, could not be done by a deed containing no words of grant to her. And we shall assume for the purpose of the present case, in accordance with the argument for appellants, that the instrument, if intended as a deed, is void on the ground taken against it, though reasons of considerable cogency in the peculiar circumstances have been urged to the contrary.

(1, 2) This instrument, then, on its face, to use the language of STONE C. J., in *Sharp v. Hall*, 86 Ala. 110, 5 South. 497, 11 Am. St. Rep. 28, is a nondescript, falling within an indeterminable class, which may be pronounced one thing or the other, will or deed, according to circumstances. If it cannot operate as a deed, but may as a will, then, the case being otherwise doubtful, the court will incline to pronounce in favor of its testamentary character, without attaching controlling importance to mere form, ut res non pereat. And whenever a paper of dubious import is so framed as in any event to postpone actual enjoyment under it until the death of the maker, as in the case here, all the attending circumstances may be put in proof as aids in determining whether the maker intended it should oper-

ate as a deed or a will.—*Sharp v. Hall, supra,* and authorities there cited.

(3, 4) Looking to the extraneous facts that have been proved, in connection with indications afforded by the face of the paper, we feel confident that the maker intended that it should operate as a will. He and his wife, having no children, had taken the beneficiaries named in this paper into their household and had reared them from infancy in all respects as their natural children. On divers occasions he declared his purpose to leave them his property after the death of himself and wife. In 1893, being then far advanced in years, he executed the instrument in controversy. He acknowledged the paper before a notary, but retained possession of it for four years, and then he sent it to one of the named beneficiaries, who had married and moved away to Florida, with a letter wherein he referred to the fact that he and his wife were feeble, explained that he was sending the paper, which would show how he wanted his affairs settled after he and his wife were gone, and directed that it should not be "brought forward" during the life of his wife—who, evidently, he expected to survive him, as she did—unless some one should try to dispossess or trouble her. Afterwards, on several occasions, he referred to the paper in the possession of this beneficiary as his will.

We have spoken of the instrument as executed in 1893. The last figure indicating this date has evidently been changed, both in the subscribing clause of the instrument and in the maker's acknowledgment before a justice of the peace. There was, however, no effort to conceal the fact that a change was made, though there may be some doubt as to just what the change was. Considing the evidence on this point, we conclude that the

change was made at the behest of the maker and probably at the time the instrument was executed. The only effect of the change, if made as suggested by appellants, would be to reflect upon the probative force of the fact that the instrument was retained for a long time in the possession of the maker. But without that fact, the others referred to having been clearly established, we would hold that there was no delivery of the instrument to take effect in praesenti.

On our latest consideration of the general subject here involved, SOMERVILLE, J., citing many cases of our own, and many besides from other jurisdictions, remarked that, while there seemed to be a substantial uniformity of opinion as to the general principles to be applied in such cases, the cases themselves exhibited the utmost contrariety in the particular conclusions reached.—*Phillips v. Phillips,* 186 Ala. 545, 65 South. 49. The court in that case, refusing to follow a dictum to the contrary in *Trawisck v. Davis,* 85 Ala. 343, 5 South. 83, held that an instrument, constituting in all other respects a formal deed, acknowledged, delivered, and recorded within a short time of the recited date of its execution, was not converted into a will by the addition of the words, "This deed is not to take [effect] until after my death." The decision in that case (*Phillips v. Phillips*) was placed specifically upon the authority of *Abney v. Moore,* 106 Ala. 131, 18 South. 60, and in both of them the court had before it the fact only of an instrument and the fact of its delivery as a presently operative conveyance very shortly after execution. By reference to the face of the instrument here under consideration, which we may concede to be ambiguous, though of itself it looks rather persuasively towards a conclusion in favor of testamentary character, and the extraneous

[Seay, et al. v. Huggins, et al.]

facts appearing in evidence, ample grounds for discrimination will be found, leading with conviction to the conclusion already stated—a conclusion well supported in these circumstances by precedents the authority of which has not been doubted or denied.—*Sharp v. Hall* and *Crocker v. Smith*, both *supra*, and authorities there cited.

(5) It only remains to be observed, in view of an argument advanced in brief for appellant, that the testamentary character of this instrument is not affected by the fact that the deceased owner could not by will deprive his widow of her right of homestead any more than he could by deed convey the homestead without her concurrence, evidenced as the statute requires. The dispositions of the will in every such case are subject to the homestead rights of the surviving wife. The widow makes no complaint against the will. And in fact it appears that she, recognizing the evident purpose of her husband to give the property to appellants after her death, has executed a conveyance to them.

It results that the decree dismissing the bill should be affirmed.

ANDERSON, C. J., and MCCLELLAN and SOMERVILLE, JJ., concur.